HAMILTON, Senior Circuit Judge,
dissenting:
Between 1994 and 1996, Novell owned WordPerfect, a word processing software application, and Quattro Pro, a spreadsheet software application. In Counts II through V of its complaint, Novell sought damages for Microsoft’s alleged monopolization (and attempted monopolization) of the word processing and spreadsheet software application markets, in which Word-Perfect and Quattro Pro competed. These claims, all parties agree, are barred by the applicable statute of limitations under the Sherman Act. Count I, which is the subject of this appeal, seeks damages for the same claims that are time-barred in Counts II through V. More specifically, Novell alleges in Count I that Microsoft’s antitrust violations in the operating systems market, which tolled the statute of limitations during the pendency of the government’s case against Microsoft for anti *264 trust violations in such market, damaged their word processing and spreadsheet software applications. The flaw in Count I is obvious: because the claim is premised on Microsoft’s anti-competitive conduct in the operating systems market, Count I necessarily is a claim “associated directly or indirectly with” DR DOS. (J.A.1966-67).
To be sure, the majority recognizes that the phrase ‘“associated directly or indirectly’ [contained in the Asset Purchase Agreement (APA)] can be read broadly” to cover the claim asserted in Count I. Ante at 260. However, the majority ignores the plain, patently broad language in the APA, choosing instead to craft its own narrow reading of the phrase, for two reasons.
First, the majority states that the phrase at issue “is cabined by reference to a specific set of property” that was transferred in the APA. Ante at 260. As its reasoning goes, because word processing and software applications were not part of this specific set of property, such applications could not be directly or indirectly related to the specific set. Such reasoning is flawed for the simple reason that it reads out the word “indirectly” from the APA. The word “indirectly” was inserted into the APA for an obvious reason — to allow Caldera to proceed with a claim against Microsoft that was not envisioned by the parties, but nevertheless related in some indirect manner to the DR DOS operating system. Count I fits perfectly under the APA’s “indirect” umbrella. The claim is premised on harm caused, not in the software applications market in which both WordPerfect and Quattro Pro competed, but rather in the operations systems market in which both Microsoft’s Windows 95 and DR DOS competed. Thus, at the very least, the harm to Word-Perfect and Quattro Pro caused by Microsoft’s monopolization of the operating systems market is indirectly (even perhaps directly) associated with DR DOS.
And it should come as no surprise that the term “indirectly” made its way into the APA. All encompassing words such as “indirectly” are commonly used in asset purchase agreements to cover such unforeseen events, and courts should read such terms broadly to ensure clarification and protection to the rights of all parties to a contract. Yet, the majority takes the opposite tack, reading an extremely broad term narrowly. Put simply, common sense tells us that a claim that only exists by virtue of Microsoft’s alleged monopolization of the operating systems market is a claim “indirectly” related to the DR DOS operating system.
Second, the majority relies on certain flimsy extrinsic evidence, which, according to it, “attest[s] to the absence of any intention to convey Novell’s present claims.” Ante at 261. Such evidence includes the affidavits and testimony of Novell’s general counsel, Novell’s CEO, and Caldera’s chief negotiator. Any examination of such evidence must be viewed with extreme caution, as it is undisputed that: (1) Novell sold DR DOS, in part, to allow another party, such as Caldera, to proceed against Microsoft in an antitrust action; and (2) Novell and Caldera worked in tandem in the Caldera action to litigate against Microsoft. More importantly, as the able district judge handling the case below recognized, such extrinsic evidence is “ambiguous and inconclusive,” (J.A. 374), as neither party contemplated the existence of the Count I claim until it became apparent that the claims in Counts II through V were time-barred. However, the absence of such contemplation does not inject any ambiguity into the APA, because, as the district judge aptly observed, Novell unmistakably assigned “claims for damage inflicted upon Novell’s software applica *265 tions through the prism of the operating system market,” (J.A. 371), such that the harm to the software applications were indirectly associated with the operating market in which DR DOS competed. (J.A. 371).
In sum, because I believe the district judge correctly granted summary judgment in favor of Microsoft on Count I, in its thorough and convincingly written opinion, I respectfully dissent.